IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

− − − − − − − − − − − − − − − − − − − − − − − − − − − − − − − x
                                                              :
IN RE WASTE MANAGEMENT, INC.                                  :   Master File No. H-99-2183
SECURITIES LITIGATION                                         :
                                                              :
− − − − − − − − − − − − − − − − − − − − − − − − − − − − − − − x

**DECLARATION OF JONATHAN M. PLASSE IN
SUPPORT OF MOTION OF LEAD PLAINTIFF CONNECTICUT
RETIREMENT PLANS AND TRUST FUNDS FOR AUTHORIZATION OF
SECOND DISTRIBUTION OF NET SETTLEMENT FUND, APPROVAL OF
ADMINISTRATIVE DETERMINATIONS, ESTABLISHMENT OF TAX RESERVE,
AND PAYMENT OF CLAIMS ADMINISTRATOR'S FEES AND EXPENSES**

JONATHAN M. PLASSE declares as follows pursuant to 28 U.S.C. § 1746:

1. I am a member of the law firm of Labaton Sucharow LLP, Court-appointed Lead Counsel for Lead Plaintiff Connecticut Retirement Plans and Trust Funds ("Lead Plaintiff") and the Class in this action. I am admitted to practice before this Court *pro hac vice*.

2. I respectfully submit this affidavit in support of Lead Plaintiff's motion for an Order: (a) authorizing a second distribution of the remaining balance of the Net Settlement Fund to eligible Authorized Claimants; (b) approving the associated administrative determinations by the settlement and claims administrator, Complete Claim Solutions, LLC ("CCS"); (c) authorizing the establishment of a reserve of $350,000.00 to satisfy tax obligations to be incurred by the Net Settlement Fund; and (d) authorizing payment of the additional fees charged and expenses incurred by CCS, including estimated fees and expenses for future services, in the amount of $509,634.65.

A.    **Procedural Background**

3. On May 1, 2002, this Court entered a Final Judgment granting final approval to the $457 million Settlement between and among Lead Plaintiff and Defendants Waste Management, Inc.

("Waste Management"), Rodney R. Proto and Earl E. DeFrates, under the terms set forth in the First Amended Stipulation of Settlement dated January 29, 2002, and dismissing and releasing the claims asserted against the Defendants.

4. The Settlement provided for the distribution of the Net Settlement Fund which exceeded $426 million (after deduction of Court-approved attorney's fees, expenses and administrative costs, and after addition for accrued interest), in accordance with the Court-approved Plan of Allocation among Authorized Claimants who purchased, exchanged or otherwise acquired Waste Management securities from June 11, 1998 through November 9, 1999 (the "Class Period").

5. On July 31, 2003, this Court entered a Order Granting Motion to Amend Final Judgment Solely With Respect to Plan of Allocation (the "Amendment Order"), which, among other things, modified the Plan of Allocation to set aside $4.5 million from the Net Settlement Fund. This $4.5 million amount, less certain fees, costs and expenses the Court may have awarded to counsel for the sole objector to the Settlement, was allocated to the Waste Management Retirement Savings Plan for the benefit of the participants of such Plan. Such allocation was in addition to the amount to which the participants of the Plan otherwise were entitled to receive under the Plan of Allocation.

6. Also on July 31, 2003, this Court entered an Amended Final Judgment Pursuant to Fed. R. Civ. P. 54(b) (the "Amended Final Judgment"). Among other things, the Amended Final Judgment amended the May 1, 2002 Final Judgment to incorporate the terms of the Amendment Order, and affirmed that all other aspects of the Final Judgment and the Court's Findings of Fact and Conclusions of Law entered on May 10, 2002, including without limitation the Court's findings and rulings regarding class certification, class notice, final settlement approval, adequacy of representation, the issuance of a permanent injunction, the release of claims, the award of attorney's fees and expenses to Lead Counsel, Lead Plaintiff's costs and expenses, and administrator's fees and

expenses, remain in full force and effect, binding all parties to this action, including without limitation the Waste Management Retirement Savings Plan.

7. No one filed an objection to the Amended Final Judgment, and it became final on September 2, 2003.

8. On September 16, 2003, Waste Management caused approximately $464 million, representing the balance of the Settlement considerations plus accrued interest, to be wire-transferred to an account maintained by Lead Counsel.

9. On October 22, 2003, following the completion by CCS of claims processing, calculation of Recognized Losses and related work, Lead Plaintiff filed a motion with this Court seeking authorization to distribute the Net Settlement Fund to Authorized Claimants pursuant to the modified Plan of Allocation, and other related relief (the "Distribution Motion").

10. On December 22, 2003, this Court issued an Order granting the Distribution Motion in its entirety (the "First Distribution Order"). For the Court's convenience, the First Distribution Order is annexed to the Affidavit of Thomas R. Glenn, Senior Vice President and Chief Operating Officer of CCS (the "Glenn Aff."), filed contemporaneously herewith, as Exhibit A.

11. Thereafter, beginning on or about March 12, 2004, CCS caused more than 54,000 checks to be issued to Authorized Claimants in accordance with the administrative determinations and calculations disclosed in the Distribution Motion and approved by the Court. Additionally, through May 14, 2008, CCS caused nearly 2,500 checks to be printed and mailed to persons or entities that requested that their checks be reissued due to updated addresses, account name changes, and other operation of law issues (the "First Distribution"). See Glenn Aff. ¶ 4.

12. The First Distribution having been fully carried out, a balance of $21,369,472.86 remains in the Net Settlement Fund as of May 27, 2008. See Glenn Aff. ¶ 5. This amount is now

available for a second distribution of settlement funds to eligible Authorized Claimants, and is the basis for the present motion.

13.     Lead Plaintiff requests, as more fully discussed below, that certain available funds revert back to the Net Settlement Fund for distribution to eligible Authorized Claimants, and that a second distribution of the funds in the Net Settlement Fund be made to eligible Authorized Claimants whose checks were cashed in the First Distribution and whose claims will result in a check in the second distribution of not less than $10.00.

**B.     Authorization of Second Distribution of Net Settlement
         Fund and Associated Administrative Determinations**

14.     CCS, in administering the settlement and claims process, has continued to work diligently under Lead Counsel's supervision and has made every effort to enable the greatest possible number of Authorized Claimants to receive a cash payment from the Net Settlement Fund.

15.     As more fully described in the accompanying Glenn Affidavit, included in the amount available for a second distribution are checks which were returned to CCS for redeposit because claimant accounts were closed, claims that were incorrectly filed in the first place, or checks that simply remain outstanding despite CCS's efforts to locate Class members or encourage them to cash their checks.

16.     Lead Plaintiff, based on CCS's determinations, now respectfully requests that the Court approve inclusion by CCS of certain of the outstanding and uncashed checks in the Net Settlement Fund for a second distribution, to disallow certain claims whose checks remain uncashed or were redeposited, and to authorize a second distribution of settlement proceeds only to the remaining, eligible Class members.

17.     In particular, Lead Plaintiff respectfully requests the following relief based on CCS's various administrative determinations concerning the second distribution, as more fully described in the Glenn Affidavit:

4

18. *Uncashed Checks.* As discussed in the Glenn Affidavit, CCS made diligent and extensive efforts to re-issue checks to those Authorized Claimants who received but did not deposit their checks from the First Distribution. Nonetheless, 770 checks totaling $1,053,332.61 remain uncashed, and are now "stale-dated" and cannot be deposited. Lead Plaintiff requests that the total amount of these checks be made available in a second distribution of the Net Settlement Fund, and that these claimants be determined to be ineligible to receive further distributions in the Settlement. See Glenn Aff. ¶¶ 7-8 & Ex. B thereto.

19. *Undeliverable Checks.* CCS similarly made diligent and extensive efforts to locate Authorized Claimants and re-mail checks that were returned by the U.S. Postal Service as undeliverable. Nonetheless, 232 checks totaling $264,722.76 remain uncashed. Lead Plaintiff requests that the total amount of these checks be made available in the second distribution, and that these claimants be determined to be ineligible to receive further distributions in the Settlement. See Glenn Aff. ¶¶ 9-10 & Ex. C thereto.

20. *Refused Funds.* There are 28 checks, totaling $9,683,391.62, which have been returned to CCS by Authorized Claimants or custodians who no longer maintain the applicable accounts or who do not want the money for various reasons. These claimants have refused to deposit their checks and have returned them to CCS. Lead Plaintiff requests that the total amount of these checks be made available in the second distribution, and that these claimants be determined to be ineligible to receive further distributions in the Settlement. See Glenn Aff. ¶ 11 & Exs. D-E thereto.

21. *Duplicative Transaction Filings.* CCS has received and redeposited 124 checks, totaling $723,151.89, from claimants or their representatives who received duplicate payments for the same securities transactions within another eligible claim. Lead Plaintiff requests that the total amount of these checks be made available in the second distribution, and that the duplicative claims be determined to be ineligible to receive further distributions in the Settlement. See Glenn Aff. ¶ 12.

22. *JP Morgan and Allianz Dresdner Overlapping Claims.* A significant overlapping of claims was caused by Allianz Dresdner's inadvertent filing of claims on behalf of the same clients as JP Morgan and certain other custodians. CCS identified 121 claims as having been incorrectly filed by JP Morgan or Allianz Dresdner, with a net overpayment from the Net Settlement Fund of $6,054,898.45. To date, CCS has recovered $5,223,500.84 from Allianz Dresdner and JP Morgan. As noted below and in the Glenn Affidavit, $831,397.61 remains unreturned from JP Morgan. See Glenn Aff. ¶¶ 13-14 & Ex. F thereto.

23. *JP Morgan Newly Submitted Transactions (Underpaid).* After the First Distribution was carried out, JP Morgan resubmitted an electronic file with amended information to determine the correct Recognized Losses for claims that were originally submitted with missing or incorrect information. CCS then learned that 16 claims originally filed by JP Morgan contained incorrect transactional information. Applying the approved Plan of Allocation (as modified) to the corrected transactions would yield a difference in distribution owed to JP Morgan clients of $1,121,942.99. Lead Plaintiff requests that these claims be included for payment retroactively in the First Distribution, and also that these claims be included in the second distribution. See Glenn Aff. ¶ 15 & Ex. G thereto.

24. *Overpaid Claims for Which a Refund Is Sought.* There are nine claims totaling $831,397.61 for JP Morgan clients who have been "overpaid" and for which a refund has not yet been received by CCS. The net difference between the amount owed to JP Morgan as noted above, $1,121,942.99, and the amount owed by JP Morgan, $831,397.61, is $290,545.38. If the Court permits JP Morgan's newly submitted claims to be paid as sought herein, CCS will cause JP Morgan to be paid $290,545.38 from the Net Settlement Fund prior to carrying out the second distribution. Lead Counsel has conferred with JP Morgan in detail regarding this arrangement, and JP Morgan

has given its assent.  Lead Plaintiff accordingly requests that the Court approve these determinations and arrangement regarding JP Morgan.  See Glenn Aff. ¶¶ 16-17 & Exs. H-I thereto.

25.     *Checks Withheld From the First Distribution.*  CCS withheld 134 checks totaling $27.94, averaging only 20 cents each, from the First Distribution because the cost of postage and printing and mailing for these checks would have exceeded the value of the checks.  Lead Plaintiff requests that these claims be considered ineligible and this amount be made available in the second distribution.  To protect the Net Settlement Fund from such inefficiencies in the second distribution, and to limit the number of smaller checks that will go uncashed, Lead Plaintiff requests that the Court approve a *de minimus* threshold of $10.00, such that otherwise eligible claims must result in a check of no less than $10.00 to be payable in the second distribution.  See Glenn Aff. ¶ 18(a).

26.     CCS also withheld four checks totaling $293,472.79 from the First Distribution because CCS determined, in consultation with the Federal Bureau of Investigation, that these claims were fraudulent.  Lead Plaintiff requests that this total amount be made available in the second distribution and that these claimants be determined to be ineligible to receive distributions from the Net Settlement Fund.  See Glenn Aff. ¶ 18(b) & Ex. J thereto.

27.     *Other Newly Submitted Claims.*  Since the Court issued the First Distribution Order and the First Distribution was carried out, CCS has received 47 new claims.  Lead Plaintiff requests that these late-filed claims be deemed ineligible.  See Glenn Aff. ¶ 19 & Ex. K thereto.

28.     *Reserve Funds.*  CCS has reissued three checks related to the First Distribution in the last six months.  As of May 28, 2008, only one check has not cleared, and this check is not yet stale-dated.  Lead Plaintiff requests that the Court authorize CCS to hold $6,537.68 from the Net Settlement Fund in reserve to satisfy this check.  See Glenn Aff. ¶ 20 & Ex. L thereto.

**C.   Establishment of Reserve
for Potential Tax Liabilities**

29.   Since the First Distribution, the Net Settlement Fund has continued to earn substantial interest and to pay federal taxes as a Qualified Settlement Fund under IRS Regulations. Lead Plaintiff requests that the Court authorize CCS to hold $350,000.00 of the Net Settlement Fund in reserve to satisfy potential tax obligations going forward.  See Glenn Aff. ¶ 21.

30.   The cost of preparing and filing the tax returns is included in the estimated fees and expenses to complete the administration of the Settlement.

**D.   Payment of Additional Fees Charged
and Expenses Incurred By CCS**

31.   Annexed to the Glenn Affidavit as Exhibit M is an invoice submitted by CCS to Lead Counsel for $459,516.50 in fees and $50,118.15 in expenses for services rendered and costs incurred since October 2003, when CCS last submitted an invoice for claims administration in this matte. including $88,515.00 in estimated fees and expenses to complete the administration of Claims for the proposed second distribution, to file necessary tax returns, and to respond to anticipated inquiries from claimants.  To date, CCS has not been paid or reimbursed for these fees or expenses. See Glenn Aff. ¶ 22 & Ex. M thereto.

32.   Lead Plaintiff respectfully requests that these total fees and expenses be approved as fair and reasonable, and that the Court authorize payment of these $509,634.65 in fees and expenses to CCS from the Net Settlement Fund.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 29, 2008.

                                                     /s/ Jonathan M. Plasse
                                                JONATHAN M. PLASSE